**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| KOBEAY SWAFFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | No. 24-cv-10509-PBS |
| ) | |
| RENTGROW, INC., ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

June 22, 2026

Saris, J.

**INTRODUCTION**

In 2023 and 2024, Defendant RentGrow, Inc. ("RentGrow") produced two tenant screening reports about Plaintiff Kobeay Swafford ("Plaintiff") in connection with Plaintiff's Section 8-related housing applications. RentGrow erroneously reported on both occasions that Plaintiff had been convicted in Michigan of first degree murder, among other crimes, even though those convictions had been set aside on procedural grounds by the Michigan Supreme Court. Plaintiff subsequently filed this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, alleging that RentGrow failed both to follow reasonable procedures to ensure maximum possible accuracy of his criminal history and to conduct a reasonable reinvestigation of the accuracy

1

of these reported convictions when he submitted a dispute. RentGrow now moves for summary judgment on all of Plaintiff's FCRA claims.

After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** RentGrow's motion for summary judgment (Dkt. 75).

## BACKGROUND

When evaluating a summary judgment motion, courts "construe the relevant facts in the light most favorable to the non-moving party." Deaton v. Town of Barrington, 100 F.4th 348, 353 (1st Cir. 2024).

## I. Plaintiff's Criminal History

In 2004, Plaintiff was charged in Michigan state court with first-degree murder, possession of a firearm during commission of a felony, and assault with intent to commit murder. See People v. Swafford, 762 N.W.2d 902, 903 (Mich. 2009). The trial court dismissed the charges on procedural grounds. See id. at 904-05. The Michigan Court of Appeals then reversed the dismissal, and Plaintiff was convicted by a jury on all three counts in 2007. See id. at 905 & n.5. Two years later, the Michigan Supreme Court reinstated the dismissal of Plaintiff's convictions. See id. at 903. The Michigan Supreme Court's disposition of the case was not reflected in various databases maintained by Michigan government agencies, apparently due to an administrative oversight.

2

## II.   <u>Plaintiff's First Tenant Screening Report</u>

In August 2023, Plaintiff applied to transfer his Section 8 housing voucher from Kentucky to Evansville, Indiana. The Evansville Housing Authority ("Evansville") requested a tenant screening report on Plaintiff from RentGrow, which provides resident screening services to assist landlords and property managers. Issued on August 21, 2023, RentGrow's report (the "Evansville report") had two "sub-reports," which contained information from the Michigan Department of Corrections ("MDOC") and the Michigan Wayne County Circuit Court ("Wayne County Court"), respectively. The first sub-report repeated each of Plaintiff's three Michigan criminal charges at least three times, with the disposition of each charge listed as "DOC [Department of Corrections] Supervision" and one triplet of charges noting a status of "PRISON ACTIVE OFFENSE." Dkt. 78-17 at 3. It reported a life sentence for two of the murder charges. The second sub-report only listed Plaintiff's assault with intent to commit murder charge. All charges in the Evansville report noted a disposition and/or sentencing year of 2007. The Evansville report did not indicate that the charges had been dismissed.

RentGrow obtained the information about Plaintiff's criminal history from Cleara, LLC ("Cleara"), a third-party public records vendor. RentGrow vetted Cleara before selecting it as a vendor for criminal record information. Cleara sources information from MDOC

3

and the Wayne County Court. Both the Wayne County Court electronic docket and the MDOC database integrate disposition information obtained from Michigan appellate courts as standard practice. Cleara acquires its data in the form of either "bulk" files or updated information files as frequently as government sources make them available (monthly in the case of MDOC and Wayne County Court data). Cleara analysts then conduct regression testing on the data for quality control purposes. Upon receipt of data from Cleara, RentGrow follows its own procedures to assess the data, including filtering out records that do not match the consumer or are not reportable under state law or company policy and conducting quality assurance on each record. RentGrow also monitors dispute metrics to ensure it is reporting accurate information.

When a RentGrow analyst reviewed the information about Plaintiff received from Cleara and observed a disposition of "DOC Supervision," she confirmed the convictions by checking the Wayne County Court's online Odyssey Public Access system ("Odyssey") and the online MDOC database in accordance with RentGrow's policy. Both sources erroneously showed that Plaintiff had been convicted of the charges. The Odyssey website contains disclaimers that its information "is not considered an official court record" and that it "should not be used for background checks." Dkt. 83-6 at 2.

Evansville denied Plaintiff's application based on the erroneous convictions listed in the Evansville report. After

4

receiving notice of the denial on August 21, 2023, Plaintiff immediately contacted Evansville to explain his circumstances and request a review of the determination. On August 29, Evansville reversed its decision and granted Plaintiff a Section 8 voucher. Plaintiff then applied to Colonial Manor, a housing complex in Evansville, where he was screened by a different tenant screening company and denied residence based on an outstanding rent collection. Plaintiff preemptively disclosed his criminal history to Colonial Manor and asserts that Colonial Manor's explanation for denying his application seemed like "an excuse." Dkt. 78-7 at 22.

## III. **Plaintiff's Dispute and RentGrow's Reinvestigation**

On August 28, 2023, Plaintiff emailed RentGrow to dispute the criminal convictions on the Evansville report. Plaintiff's email read in relevant part as follows: "I am requesting a dispute form about the charges shown on my background check. Attached, are certified legal documents of the dismissal that proves the charges in Michigan are shown in error." Dkt. 78-12 at 2. Plaintiff attached certified copies of the orders issued when the Michigan trial court initially dismissed his charges and a copy of the register of action for his case. The "Case Information" section at the top of the docket listed a "Case Flag[]" of "Multiple Dispositions -- Case Data Needs Verification SCAO Data Review." Id. at 6. The register of action also included trial court orders

5

in 2009 and 2010 stating that "the Defendant shall be released from custody forthwith" and awarding defense counsel "extraordinary fees of $23,663.97." Id. at 14.[1]

RentGrow forwarded Plaintiff's dispute to Cleara on September 3, 2023, and independently rechecked the Odyssey docket to confirm Plaintiff's criminal record. Cleara queried the Michigan State Police's Internet Criminal History Access Tool ("ICHAT") system, identifying no discrepant information. Additionally, analysts from both companies independently called the Wayne County Clerk, who confirmed that Plaintiff's case had not been dismissed. RentGrow subsequently communicated to Plaintiff that it had found no record of a post-conviction dismissal.

## IV.  **Plaintiff's Second Tenant Screening Report**

In March 2024, Plaintiff applied for Section 8 housing at the Mallard's Landing apartment complex in Tennessee ("Mallard's"), which also requested a tenant screening report from RentGrow. To compile this report, RentGrow again sourced information on Plaintiff's criminal history from Cleara. Based on information Cleara collected from the Wayne County Court and then reported to RentGrow, RentGrow's report to Mallard's (the "Mallard's report") listed that Plaintiff had been convicted of the three Michigan

---

[1] It is unclear from the record whether the version of the register of action that RentGrow checked before sending its report to Evansville contained the text of these orders.

criminal charges and had completed his sentence. Mallard's denied Plaintiff's application on March 9, 2024, citing his criminal history and a "minor level of collection items" reported by RentGrow. Dkt. 78-7 at 23. In his declaration, Plaintiff states that he "was also specifically asked about [his] criminal record and that [sic] [he] was being denied on the basis of the record." Dkt. 83-2 ¶ 11.

On the same day as the denial by Mallard's, Plaintiff applied to a nearby apartment complex called Hickory Lake. Hickory Lake accepted Plaintiff's application but did not have a unit available until May 2024. Plaintiff spent $102 for a hotel room for one night and then moved to transitional veterans housing while waiting for a unit at Hickory Lake. Plaintiff experienced bedbugs and other conditions in the transitional housing that exacerbated his anxiety and tinnitus. When Plaintiff moved into Hickory Lake on May 16, 2024, he continued to face poor living conditions, including dog excrement smells, noise, and cockroaches.

A few months later, Plaintiff reapplied for housing at Mallard's but was again denied. The denial letter cited only Plaintiff's insufficient income and minor collection items; Mallard's background check on this occasion did not turn up Plaintiff's erroneous conviction record. Although Plaintiff did not follow up about the denial, Mallard's reversed its decision a few weeks later. Plaintiff moved into Mallard's on December 2,

2024. Plaintiff has not had problems with cockroaches or excessive noise while living at Mallard's.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one which 'a reasonable jury could resolve . . . in the favor of the non-moving party,' and a material issue is one with the 'potential to affect the outcome . . . under the applicable law.'" Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 108 (1st Cir. 2024) (alterations in original) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). In determining whether to grant summary judgment, a court must construe "the facts in the light most favorable to the non-moving party" and "draw[] all reasonable inferences" in her favor. Id. (quoting Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 408 (1st Cir. 2015)).

The party seeking summary judgment "must [first] adumbrate 'an absence of evidence to support the nonmoving party's case.'" Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 733 (1st Cir. 2022) (alteration in original) (quoting Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989)). Once the movant does so, "[t]he burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact." Id. To satisfy this burden, the

8

nonmovant "must present definite, competent evidence" showing that a trialworthy issue exists. Id. (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

**DISCUSSION**

I.   **The FCRA**

Congress enacted the FCRA to, among other things, "ensure fair and accurate credit reporting." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). The FCRA imposes various duties and requirements with respect to consumer reports prepared and disseminated by consumer reporting agencies ("CRAs"), see TransUnion LLC v. Ramirez, 594 U.S. 413, 418-19 (2021), and "furnishes a private right of action to consumers who claim to be harmed by violations of its strictures," McIntyre v. RentGrow, Inc., 34 F.4th 87, 92 (1st Cir. 2022).

There are "two different bases of liability for violation of the same substantive obligation" under the FCRA: "[n]egligent noncompliance and willful noncompliance." Id.; see 15 U.S.C. §§ 1681n-1681o. "A negligent noncompliance claim resembles a garden-variety negligence claim, with a substantive provision of the FCRA providing the relevant duty and standard of care." McIntyre, 34 F.4th at 92. A plaintiff who prevails on a negligent noncompliance claim is entitled to actual damages and attorneys' fees. See 15 U.S.C. § 1681o(a); McIntyre, 34 F.4th at 93. A willful noncompliance claim is "similar to" a negligent noncompliance

claim, with the "added requirement . . . of showing willfulness." McIntyre, 34 F.4th at 93. Willfulness in this context means that "the noncompliance was knowing or reckless." Id. A plaintiff may recover actual or statutory damages, punitive damages, and attorneys' fees for a successful willful noncompliance claim. See 15 U.S.C. § 1681n(a); McIntyre, 34 F.4th at 93.

Plaintiff's amended complaint alleges that RentGrow violated three substantive obligations that the FCRA imposes on CRAs: (1) the duty to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report under 15 U.S.C. § 1681e(b); (2) the duty, "upon request," to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file" under 15 U.S.C. § 1681g(a)(1); and (3) the duty, when "the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer," to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" under 15 U.S.C. § 1681i(a)(1)(A). Plaintiff has abandoned his claim that RentGrow failed to disclose his file to him upon request by not addressing the claim in his opposition to RentGrow's motion for summary judgment. See Montany v. Univ. of New Eng., 858 F.3d 34, 41 (1st Cir. 2017). The Court thus only addresses Plaintiff's claims alleging noncompliance with § 1681e(b) and § 1681i(a)(1)(A).

Plaintiff's claims alleging noncompliance with § 1681e(b) and § 1681i(a)(1)(A) contest the following actions taken by RentGrow with respect to the reporting of his criminal history: its August 2023 preparation of the Evansville report, its September 2023 reinvestigation when Plaintiff disputed the contents of the Evansville report, and its March 2024 preparation of the Mallard's report. Because RentGrow's knowledge at each point affects the reasonableness of its actions, the Court analyzes these actions sequentially.

## II.   Reasonable Procedures in Preparing the Evansville Report Under 15 U.S.C § 1681e(b)

The Court begins with Plaintiff's claim that RentGrow violated § 1681e(b) by failing to follow reasonable procedures when it prepared the Evansville report that inaccurately recounted his criminal history. Section 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a claim alleging noncompliance with § 1681e(b), the plaintiff must "show a failure to follow reasonable procedures for assuring maximum possible accuracy, resulting in inaccurate information in the plaintiff's consumer report and thereby injuring the plaintiff." McIntyre, 34 F.4th at 93.

RentGrow does not dispute that the Evansville report inaccurately stated that Plaintiff had undisturbed convictions for the Michigan charges. RentGrow does contend, however, that no reasonable jury could conclude on this record that it did not follow reasonable procedures when compiling Plaintiff's criminal history or that any failure to follow reasonable procedures caused Plaintiff a cognizable injury. The Court agrees with RentGrow that Plaintiff has failed to offer sufficient evidence to raise a genuine dispute that RentGrow's procedures were unreasonable to assure maximum possible accuracy with respect to the Evansville report and, thus, need not address RentGrow's arguments regarding other elements of Plaintiff's claim.

The plaintiff bears the burden of demonstrating that the procedures a CRA employed were unreasonable. See id. The reasonableness of a CRA's procedures is generally a question of fact for a jury, see id. at 99, but a court may grant summary judgment on this element if "the reasonableness or unreasonableness of the procedures is beyond question," Chaitoff v. Experian Info. Sols., Inc., 79 F.4th 800, 816 (7th Cir. 2023) (quoting Sarver v. Experian Info. Sols., 390 F.3d 969, 971 (7th Cir. 2004)).

With respect to the Evansville report, RentGrow followed a two-step process in compiling Plaintiff's criminal history. RentGrow first obtained information about Plaintiff's Michigan

12

criminal charges from Cleara, which itself sourced the information from data it received from MDOC and the Wayne County Court. In line with RentGrow's policies, a RentGrow analyst then confirmed that Plaintiff had been convicted of the charges by independently reviewing the publicly accessible MDOC and Wayne County Court (Odyssey) databases.

When, as here, "a CRA relies on a third-party vendor to furnish court-records information, . . . the question is what the record shows about the reasonableness of the procedures that the CRA implemented to assure the maximum possible accuracy of the vendor-sourced information included in its reports." McIntyre, 34 F.4th at 97. In McIntyre, for example, the First Circuit addressed a claim challenging RentGrow's reporting to landlords and property managers of information purchased from a third-party vendor on civil landlord-tenant court proceedings involving prospective tenants. See id. at 91, 97. Although RentGrow "took care to select the [vendor] that it deemed best" and filtered out records "to ensure that it was not including mismatched or unreportable information," id. at 98, the court determined that there was a genuine dispute about the reasonableness of RentGrow's procedures for assuring maximum possible accuracy of the information it reported, see id. at 99. The court stressed that RentGrow did not itself verify the information provided by the vendor, spot-check the vendor's reports, or review court filings or dockets. See id.

13

at 97-98. The court also explained that RentGrow was on notice of the potential unreliability of the vendor's information because around 2.3% of the reports containing such information were disputed (mostly successfully) and because the vendor's parent company stopped reporting civil court judgments to end-users following a 2015 settlement with more than thirty states. See id. at 98. Finally, the court noted that RentGrow was "largely unaware of both the processes by which [the vendor] collected th[e]se records and the procedures that [the vendor] used to update records and verify their accuracy." Id.

The circumstances surrounding the Evansville report differ materially from McIntyre. For one, RentGrow did not blindly rely on information from Cleara about Plaintiff's criminal history. Instead, RentGrow confirmed that information in the MDOC and Odyssey databases. See Henson v. CSC Credit Servs., 29 F.3d 280, 285 (7th Cir. 1994) (holding that a CRA "is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate"). Plaintiff argues that it was unreasonable for RentGrow to rely on the Odyssey database because the database includes a disclaimer that its information is not an official court record and should not be used for background checks. Courts are split on whether such disclaimers are sufficient to raise a genuine dispute about the reasonableness of a CRA's

14

reliance on an online court database. Compare Waters v. HireRight, LLC, No. 23-cv-06668, 2025 WL 4317687, at *7 & n.6 (D.S.C. Sep. 16, 2025) (collecting cases for the proposition that "CRAs may rely on court websites with similar disclaimers or which are otherwise not the 'official' sources of the information"), with Abrogina v. Kentech Consulting, Inc., No. 16-cv-0662, 2023 WL 6851988, at *4 (S.D. Cal. Oct. 17, 2023) (finding a genuine dispute about the reasonableness of a CRA's procedure where the CRA checked a court's website that had a disclaimer that it was not the official record). In this Court's view, a CRA may rely on a court database with this type of disclaimer, as it would be unreasonable to require CRAs to unearth a physical case file to verify every criminal charge and its disposition. Notably, Plaintiff does not raise a similar challenge to RentGrow's reliance on the MDOC database to confirm Plaintiff's convictions.

Moreover, unlike in McIntyre, the record contains no facts suggesting that RentGrow was on notice that Cleara was an unreliable source. Plaintiff stresses that about half of disputes over RentGrow's criminal record reporting in 2023 and 2024 revealed inaccuracies in its reports. But RentGrow received disputes about only 0.2% of reports returning a criminal record and only 0.03% of all of its criminal records screenings. This dispute rate is significantly lower than the First Circuit found troubling in McIntyre and did not put RentGrow on notice that Cleara's data was

15

potentially unreliable. See Smith v. LexisNexis Screening Sols., Inc., 837 F.3d 604, 610-11 (6th Cir. 2016) (calling a dispute rate of 0.2% "remarkably low").

Plaintiff also asserts that RentGrow should have known that Cleara's data was likely inaccurate because RentGrow only pays Cleara a maximum of ten cents for any report in excess of five million per year and because RentGrow and Cleara's contract states that Cleara could not guarantee the accuracy of the information it furnished. Plaintiff, however, offers no basis for concluding that the amount RentGrow pays to Cleara is so low that it suggests Cleara cannot be reliably sourcing its information. And a "standard disclaimer in a contract that allocates the risk between the contracting parties is not the same as [Cleara] making any statement that its records are inaccurate, and is not evidence that [RentGrow] should have known [Cleara]'s records were inaccurate." McIntyre v. RentGrow, Inc., No. 18-cv-12141, 2021 WL 3661499, at *13 (D. Mass. July 22, 2021), aff'd, 34 F.4th 87. Finally, the record belies Plaintiff's argument that RentGrow knew nothing about how Cleara gathered and updated its criminal history information. In response to RentGrow's request for proposal, Cleara stated that it would pull criminal records from both MDOC and the Wayne County Court and update those records on a monthly basis. That RentGrow may not have known in great detail about

16

Cleara's information sourcing practices does not, without more, suggest that RentGrow's reliance on Cleara was unreasonable.

Plaintiff separately contends that RentGrow failed to employ reasonable procedures because it simply relied on the information about his criminal history provided by Cleara even though that information contained multiple inconsistencies. Plaintiff alleges the following inconsistencies in the Evansville report that should have tipped RentGrow off that the criminal history Cleara provided may have been inaccurate: 1) he was applying to transfer his Section 8 voucher while ostensibly serving a life sentence for murder; 2) the Evansville report listed nine charges from the MDOC records and only one from the Wayne County Court records; and 3) a prior tenant screening report about Plaintiff produced by RentGrow in 2020 did not include any criminal record.

Courts have held that "CRAs must look beyond information furnished to them when it is inconsistent with [their] own records" or "contains a facial inaccuracy." Rydholm v. Equifax Info. Sys. LLC, 44 F.4th 1105, 1108-09 (8th Cir. 2022) (alteration in original) (quoting Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1239 (10th Cir. 2015)); see Hammoud v. Equifax Info. Servs., LLC, 52 F.4th 669, 675 (6th Cir. 2022). It is troubling that RentGrow did not question the fact that an individual ostensibly serving a life sentence had submitted a housing-related application and did not recognize that it had issued a report three

17

years earlier that did not include any criminal history. Nonetheless, RentGrow satisfied the standard set forth in this caselaw because it did not simply rely on the information furnished by Cleara; as previously noted, RentGrow confirmed the convictions reported by Cleara by itself checking the MDOC and Odyssey databases.

Lastly, Plaintiff has not sufficiently demonstrated that it would have been reasonable to require RentGrow to conduct any further investigation into his criminal history in preparing the Evansville report. When analyzing the reasonableness of a CRA's procedures, courts often "balanc[e] the costs of a marginal return to accuracy against the potential harm to consumers from declining to incur those costs." Chaitoff, 79 F.4th at 817; see Rydholm, 44 F.4th at 1109 (explaining that the FCRA does not impose liability for noncompliance with § 1681e(b) where "'the cost of verifying the accuracy of the source' outweighs 'the possible harm inaccurately reported information may cause' a consumer" (quoting Henson, 29 F.3d at 287)); Wright, 805 F.3d at 1240 (similar).

Plaintiff primarily faults RentGrow for not searching the Michigan Supreme Court's public website for its decision reinstating the dismissal of his charges.[2] While the costs of

---

[2] Plaintiff also argues that RentGrow should have checked MDOC's online database, but the undisputed record reflects that RentGrow did so before producing the Evansville report and the database showed Plaintiff had been convicted of the charges.

18

routinely searching Michigan appellate cases to confirm that a conviction has not been overturned may not be substantial, Plaintiff has not offered any reason to believe that such a search would uncover inaccuracies except in the rarest of cases. Michigan trial courts have procedures for updating their records, including the Odyssey database, when an appellate court sets aside a conviction. And by statute, trial courts must report the new disposition to the Michigan State Police and MDOC, which are required to update their databases too. See Mich. Comp. Laws § 769.16a(8). These government databases were not properly updated in this case, but Plaintiff provides no evidence that such errors were commonplace, let alone that RentGrow was on notice of any systemic issue with the accuracy of Michigan's criminal history databases. RentGrow reasonably relied on the Odyssey and MDOC databases to reflect any appellate dispositions that altered a conviction. Cf. Hammer v. Equifax Info. Servs., L.L.C., 974 F.3d 564, 568 (5th Cir. 2020) (explaining that § 1681e(b) "does not hold a CRA strictly liable for all inaccuracies").

Accordingly, no reasonable jury could conclude on this record that RentGrow failed to follow reasonable procedures to assure maximum possible accuracy when it prepared the Evansville report. The Court therefore grants summary judgment to RentGrow on Plaintiff's claim of negligent or willful noncompliance with § 1681e(b) with respect to the Evansville report. See McIntyre, 34

F.4th at 93 (explaining that "a failure to follow reasonable procedures for assuring maximum possible accuracy" is an element of both negligent and willful noncompliance under the FCRA).

## III. Reasonable Reinvestigation of the Evansville Report Under 15 U.S.C. § 1681i

About a week after RentGrow produced the Evansville report, Plaintiff sent RentGrow an email disputing the criminal history reflected in the report. Plaintiff claims that RentGrow failed to conduct a reasonable reinvestigation upon receipt of this dispute. Under the FCRA, when the "accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the [CRA] . . . of such dispute, the [CRA] shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C § 1681i(a)(1)(A). In conducting its reinvestigation, the CRA "shall review and consider all relevant information submitted by the consumer." Id. § 1681i(a)(4). If a CRA relies on a third-party data furnisher to supply information contained in its consumer reports, the CRA must notify the furnisher of the dispute and provide "all relevant information regarding the dispute that the [CRA] has received from the consumer." Id. § 1681i(a)(2)(A).

The elements of a claim of noncompliance with § 1681i are comparable to those of a claim of noncompliance with § 1681e(b), except that § 1681i's requirements for a reasonable

20

reinvestigation "provid[e] the relevant duty and standard of care." McIntyre, 34 F.4th at 92; see Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 944 (11th Cir. 2021) (explaining that the elements of claims under § 1681e(b) and § 1681i "are the same" when a plaintiff "challenges [a CRA's] reinvestigation of an inaccuracy in his report" (emphasis omitted)); Wright, 805 F.3d at 1242 (listing the elements of a § 1681i claim as "unreasonable procedures in reinvestigating a report, inaccuracy of the report, injury, and causation"). The plaintiff must also show that he "informed the CRA about the inaccuracy," Wright, 805 F.3d at 1242, which is not contested in this case. There is also no dispute that RentGrow inaccurately reported that Plaintiff had undisturbed convictions for the Michigan charges. See DeAndrade v. Trans Union LLC, 523 F.3d 61, 67 (1st Cir. 2008) ("[W]ithout a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."). The Court now turns to the contested issues of the reasonableness of RentGrow's reinvestigation, causation and damages, and willfulness.

## A.    Reasonableness of the Reinvestigation

The parties vigorously debate whether RentGrow's reinvestigation of Plaintiff's dispute was reasonable. Plaintiff stresses that he provided RentGrow with certified copies of both the Michigan trial court's dismissal order that the Michigan Supreme Court reinstated and its docket sheet, which included a

21

2009 entry ordering his immediate release and a flag indicating that there were "[m]ultiple [d]ispositions" requiring "[v]erification." Dkt. 78-12 at 6. In light of the information he provided, Plaintiff continues, a reasonable investigation required more than simply reconfirming the convictions with the trial court. For its part, RentGrow argues that the dismissal order Plaintiff provided would not have put it on notice that its information about his criminal history was inaccurate because the order predated the convictions. RentGrow also points out that it and Cleara did not simply recheck the same sources but, rather, queried the Michigan State Police's ICHAT database and each called the trial court's clerk to confirm the convictions.

"While [RentGrow] might not be liable for failing to notice the [inaccuracy in Plaintiff's criminal record] in the first place, [a CRA] that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." Chaitoff, 79 F.4th at 817 (quoting Henson, 29 F.3d at 286). That is because "the burden imposed on the CRA by the obligation to investigate lessens 'once the consumer raises concerns that their information may be inaccurate,'" as "the agency[] 'incurs only the cost of reinvestigating that one piece of disputed information.'" Berry v. Experian Info. Sols., Inc., 115 F.4th 528, 538 (6th Cir. 2024) (quoting Hammoud, 52 F.4th at 675). "Thus, reasonable procedures

22

under § 1681e(b) are not proof of a reasonable reinvestigation under § 1681i(b)," which is ultimately a "question of costs and benefits." Chaitoff, 79 F.4th at 817; see Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (holding that the scope of a CRA's duty to reinvestigate turns in part on "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer" (quoting Henson, 29 F.3d at 287)). And as with the reasonableness of a CRA's procedures under § 1681e(b), the question of whether a CRA's reinvestigation is reasonable under § 1681i is generally one of fact for a jury. See Chaitoff, 79 F.4th at 817; Losch, 995 F.3d at 944.

Here, a jury could find that RentGrow's reinvestigation was unreasonable. As an initial matter, there are multiple aspects of the docket Plaintiff sent to RentGrow that a jury could interpret as red flags about the accuracy of RentGrow's information that should have triggered a substantial investigation, especially given the puzzling fact that Plaintiff was seeking to transfer his Section 8 housing voucher while ostensibly serving a life sentence for murder. Most notably, the docket included the order releasing Plaintiff from custody in 2009, which should have strongly suggested that his conviction for first degree murder two years earlier had been set aside. The notation stating that there were "[m]ultiple [d]ispositions" requiring "[v]erification" also

indicated that the trial court may not be accurately reporting the disposition of the case. Dkt. 78-12 at 6.

In light of these red flags, a jury could conclude that RentGrow did not conduct an adequate reinvestigation. Cf. Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 37 (1st Cir. 2010) (holding in the context of a furnisher's duty to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b) that "the central inquiry . . . is 'whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the . . . notice of dispute'" (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009))). "The term '"investigation" itself denotes a "fairly searching inquiry," or at least something more than a merely cursory review.'" Berry, 115 F.4th at 539 (quoting Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 616 (6th Cir. 2012)). The record supports a determination that RentGrow failed to conduct a fairly searching inquiry. There is no evidence that RentGrow caught any of the red flags in the documentation Plaintiff provided; indeed, the report produced by the RentGrow analyst who conducted the reinvestigation erroneously states that Plaintiff "did not provide documentation." Dkt. 78-18 at 2. RentGrow therefore did not specifically investigate the 2009 order releasing Plaintiff from custody. Nor is there any evidence that RentGrow or Cleara asked about that order when they contacted the clerk of the Wayne County Court to

24

confirm whether the charges had been dismissed. Moreover, RentGrow does not appear to have conducted any research into whether Plaintiff's convictions had been set aside on appeal, which was an obvious explanation for the discrepancy between the jury convictions and Plaintiff's insistence that his charges had been dismissed. A reasonable jury could conclude that it would not have been unduly costly for RentGrow to more carefully examine the documentation Plaintiff provided, specifically investigate the 2009 release order, and/or search for any appellate dispositions online, in particular because of the significant burden that the erroneous reporting of violent felony convictions could have on Plaintiff's ability to obtain housing.

That is not to say that the record tilts inexorably in Plaintiff's favor. When Plaintiff notified RentGrow of his dispute, he did not attach or even mention the Michigan Supreme Court's opinion. He thus did not give RentGrow the context necessary to immediately understand why the dismissal order he provided predated his convictions. RentGrow also did not simply recheck the same sources it had consulted before issuing its report or have Cleara do the same. Rather, Cleara searched a third government database -- the Michigan State Police's ICHAT database -- and both RentGrow and Cleara called the clerk of the Wayne County Court, who reviewed the official register of action. Lastly, as discussed above, RentGrow had reason to believe that the

government sources it and Cleara consulted would have reflected any appellate disposition in Plaintiff's case.

The bottom line is that "the evidence as to the reasonableness of RentGrow's [reinvestigation] [i]s conflicting and, thus, present[s] a question of fact for the jury." McIntyre, 34 F.4th at 99. Relatedly, a jury could conclude on this record that RentGrow would have discovered that Plaintiff's Michigan charges had been dismissed if it had conducted a reasonable reinvestigation. See Chiang, 595 F.3d at 37 (explaining that a plaintiff alleging noncompliance with § 1681i must "demonstrate some causal relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account").

B.   **Causation and Damages**

Plaintiff has also raised a triable case that he suffered damages caused by RentGrow's failure to conduct a reasonable reinvestigation of his criminal history. Evansville reversed its denial of Plaintiff's application to transfer his Section 8 voucher the day after Plaintiff submitted its dispute to RentGrow, so any failure by RentGrow to conduct a reasonable reinvestigation did not cause any injuries related to Evansville's initial denial of his application.

Nonetheless, a reasonable jury could find that RentGrow's insufficient reinvestigation in September 2023 caused Plaintiff

26

damages in connection with the denial of his housing application at Mallard's in March 2024. Had RentGrow discovered during its reinvestigation that Plaintiff's convictions had been set aside, the FCRA would have required it to "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation." 15 U.S.C. § 1681i(a)(5)(A)(i). The jury could conclude that when Mallard's then sought a second tenant screening report on Plaintiff from RentGrow six months later, RentGrow would not have reported the inaccurate convictions. The FCRA also requires a CRA that identifies an inaccuracy during a reinvestigation to "promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." Id. § 1681i(a)(5)(A)(ii). The jury could find that if RentGrow had informed Cleara of the error in its data, Cleara would not have reported the inaccurate convictions when RentGrow sourced information on Plaintiff from Cleara in connection with the Mallard's report.

Moreover, Plaintiff has offered sufficient evidence for a reasonable jury to find that the inaccurately reported criminal history in the Mallard's report was a cause of Mallard's decision to deny his housing application. RentGrow asserts that Plaintiff cannot prove this causal link because Mallard's cited both his criminal history and a minor level of collection items in denying

his application and Plaintiff has not offered any testimony or other evidence from Mallard's about the specific reason for the denial.

To satisfy the causation element of an FCRA claim, the plaintiff must show that "the inaccurate entry was 'a substantial factor' in bringing about" his injuries. Philbin v. Trans Union Corp., 101 F.3d 957, 969 (3d Cir. 1996) (quoting Restatement (Second) of Torts § 431(a) (A.L.I. 1965)), abrogated on other grounds by, Safeco Ins. Co of Am. v. Burr, 551 U.S. 47 (2007); see Robinson v. Equifax Info. Servs, LLC, 560 F.3d 235, 240 (4th Cir. 2009); Meuse v. Nat'l P.I. Servs., LLC, No. 21-cv-11533, 2024 WL 4190081, at *7 (D. Mass. Sep. 13, 2024); Barrepski v. Cap. One Bank (U.S.A.) N.A., No. 11-cv-30160, 2014 WL 935983, at *7 (D. Mass. Mar. 7, 2014); Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 87 (D. Mass. 2001). This causation standard does not require a plaintiff to "eliminate the possibility that 'correct adverse entries or any other factors' also entered into the decision" that injured him. Philbin, 101 F.3d at 969 (quoting Pendleton v. Trans Union Sys. Corp., 76 F.R.D. 192, 195 (E.D. Pa. 1977)); see Barrepski, 2014 WL 935983, at *7. "For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient to have caused the denial . . . but when taken together are sufficient." Philbin, 101 F.3d at 969. Under such circumstance, each reason is "a substantial

28

factor in bringing about the denial . . . and therefore a cause of plaintiff's injury." Id.

A reasonable jury could conclude that Plaintiff has satisfied this standard. In his declaration, Plaintiff states that for his Mallard's application, he "was . . . specifically asked about [his] criminal record and that [sic] [he] was being denied on the basis of the record." Dkt. 83-2 ¶ 11. In addition, Plaintiff reapplied to Mallard's a few months later, at which point Plaintiff's background check did not show the erroneous conviction record. Mallard's initially denied his application for insufficient income and minor collection items but reversed its decision a few months later. A jury could infer from the fact that Plaintiff's second application to Mallard's turned out differently that Mallard's would not have denied his first application had RentGrow's report only included the minor collection items.

Finally, Plaintiff has offered evidence that he suffered damages from the denial by Mallard's. Plaintiff faced substandard living conditions, including cockroaches and excessive noise, at the two locations where he resided between the denial by Mallard's and Mallard's acceptance of his second application. The Court therefore denies RentGrow's motion for summary judgment on Plaintiff's claim alleging negligent noncompliance with § 1681i.[3]

---

[3] Given this conclusion, the Court need not address the parties' dispute as to whether Plaintiff has offered sufficient evidence of

### C.   Willfulness

Although Plaintiff may proceed to trial on his claim of negligent noncompliance with § 1681i, the Court grants summary judgment to RentGrow on Plaintiff's theory of willful noncompliance with the same provision. "Proving willfulness" under the FCRA "requires the plaintiff to show that the noncompliance was knowing or reckless." McIntyre, 34 F.4th at 93. In this context, recklessness means that "the defendant knew or had reason to know of facts that would lead it to understand that it was running an '"unjustifiably high risk" of violating the statute.'" Id. (quoting Safeco, 551 U.S. at 70).

In this case, a reasonable jury could not find a willful failure to conduct a reasonable reinvestigation of Plaintiff's dispute. As noted above, RentGrow itself called the clerk of the Wayne County Court to confirm the convictions. RentGrow also passed along Plaintiff's dispute to Cleara, which itself confirmed the convictions by calling the clerk and checking the Michigan State Police's ICHAT database. While Plaintiff has offered sufficient evidence to raise a genuine dispute about the reasonableness of

---

any emotional distress associated with the denial of his housing-related applications by Evansville and Mallard's or RentGrow's rejection of his dispute. See Peterson v. Experian Info. Sols., 44 F.4th 1124, 1127 (8th Cir. 2022) (explaining that while "[m]ental pain and anxiety can constitute actual damages" for an FCRA claim, those "damages must be supported by competent evidence of 'genuine injury'" (alteration in original) (quoting Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013))).

this reinvestigation, the steps RentGrow took were not so obviously inadequate that it should have known it was not complying with its obligations under the statute. See Berry, 115 F.4th at 539 (holding that a plaintiff did not adequately plead willful noncompliance with § 1681i where the CRA "did not entirely fail to act but investigated by sending verification requests to" the relevant state agency); Chaitoff, 79 F.4th at 819 (granting summary judgment to a CRA on willfulness because the CRA "followed its normal procedures" in reinvestigating the dispute and "did not wholly ignore the dispute"). Nor has Plaintiff pointed to anything that put RentGrow on clear notice that this type of reinvestigation was unreasonable. RentGrow may have been negligent in not unearthing the Michigan Supreme Court's ruling dismissing Plaintiff's charges but, especially since Plaintiff did not inform RentGrow of that appellate decision, RentGrow's failure in this regard was not willful.

## IV. Reasonable Procedures in Preparing the Mallard's Report Under 15 U.S.C § 1681e(b)

That leaves Plaintiff's claim that RentGrow failed to follow reasonable procedures to assure maximum possible accuracy under § 1681e(b) when it prepared the Mallard's report. To prevail on this claim, Plaintiff must "show a failure to follow reasonable procedures for assuring maximum possible accuracy, resulting in

31

inaccurate information in [his] consumer report and thereby injuring [him]." McIntyre, 34 F.4th at 93.

Plaintiff's § 1681e(b) claim is stronger with respect to the Mallard's report than the Evansville report because it appears that RentGrow simply reported to Mallard's the information about Plaintiff's criminal record provided by Cleara without taking any steps to verify that information. Although RentGrow conducts a quality assurance review on all information included in its reports, the record does not reveal what specific steps this review entailed for the criminal history information RentGrow received from Cleara for the Mallard's report, and RentGrow generally does not confirm criminal records via online court databases when the data Cleara provides contain all relevant information about the criminal charge.

Courts have held that "CRAs must look beyond information furnished to them when it is inconsistent with [their] own records, contains a facial inaccuracy, or comes from an unreliable source." Rydholm, 44 F.4th at 1108-09 (alteration in original) (quoting Wright, 805 F.3d at 1239); see Hammoud, 52 F.4th at 675. For the reasons discussed above, RentGrow had no reason to believe that Cleara was an unreliable source. Nor were there any facial inaccuracies on the Mallard's report.[4]

―――――――――――

[4] The Mallard's report listed one set of three charges and stated that Plaintiff had been sentenced in 2007 to fifteen years in

That said, a reasonable jury could conclude that the Mallard's report was inconsistent with at least the tenant screening report RentGrow prepared about Plaintiff in 2020, which did not list the Michigan charges. RentGrow argues that the two reports are not inconsistent because it used a different vendor to obtain information for the 2020 report, but the use of a different vendor does not obviate the fact that the two reports contained different information about Plaintiff's criminal record. RentGrow does not appear to have recognized this inconsistency when preparing the Mallard's report. And while RentGrow takes some steps to ensure the accuracy of the information it sources from Cleara -- such as filtering out certain nonreportable data, conducting quality assurance reviews, and monitoring disputes -- there is no evidence RentGrow acted to verify the information provided by Cleara in this instance. Based on this inconsistency and RentGrow's failure to verify the information, a jury could find that RentGrow did not follow reasonable procedures to assure maximum possible accuracy in preparing the Mallard's report. See Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010) (explaining that "inconsistencies between two different reports concerning a single consumer are sufficient" to allow "a jury to find negligent failure to assure

---

prison on the first degree murder and assault with intent to commit murder charges. That sentence is not inconsistent with Plaintiff seeking housing more than fifteen years later in 2024.

maximum possible accuracy unless a [CRA] convinces the jury otherwise"); Stewart v. Credit Bureau, Inc., 734 F.2d 47, 52 (D.C. Cir. 1984) (per curiam) (recognizing that "inconsistencies between two files or reports" on a consumer "can provide sufficient grounds for inferring that a[] [CRA] acted negligently in failing to verify information").

The fact that RentGrow reinvestigated Plaintiff's dispute of his Evansville report six months earlier and found no inaccuracy in its reporting of his criminal history is not fatal to a determination that RentGrow failed to follow reasonable procedures in preparing the Mallard's report. There is no evidence that RentGrow followed any procedures that flagged the earlier reinvestigation during its preparation of the Mallard's report. And because Plaintiff has raised a genuine dispute about the reasonableness of the earlier reinvestigation, a jury could conclude that RentGrow could not reasonably rely on the findings of that reinvestigation. Additionally, a jury could determine that RentGrow had to take more thorough steps to verify the accuracy of the information reported by Cleara in order to satisfy § 1681e(b) because Plaintiff's earlier dispute had put RentGrow on notice of the potential inaccuracy. As discussed above, the record supports a finding that the information Plaintiff provided obligated RentGrow to investigate the 2009 release order and/or search for

34

any appellate dispositions. Had RentGrow done so, it may well have discovered that Plaintiff's convictions had been set aside.

The Court has already addressed the elements of causation and damages. For the reasons discussed above in the context of Plaintiff's claim of noncompliance with § 1681i, a jury could find that RentGrow's reporting of inaccurate information about Plaintiff's criminal record caused him damages when Mallard's denied his housing application. The Court therefore denies RentGrow's motion for summary judgment on Plaintiff's claim of negligent noncompliance with § 1681e(b) in connection with the Mallard's report.

Again, though, Plaintiff has not offered sufficient evidence to raise a genuine dispute that RentGrow's failure to follow reasonable procedures under § 1681e(b) in this instance was willful. Plaintiff stresses that various appellate courts and a 2022 Consumer Financial Protection Bureau ("CFPB") advisory opinion warned RentGrow that "it should not treat any source as 'infallible.'" Dkt. 83-12 at 17. The CFPB opinion Plaintiff cites does specifically focus on the need for CRAs to have procedures to detect inconsistencies in the information they report, including inconsistencies with an earlier report, see Fair Credit Reporting; Facially False Data, 87 Fed. Reg. 64689, 64690-91 (Oct. 26, 2022), which is one issue with the procedures RentGrow followed in preparing the Mallard's report. RentGrow did, however, have

35

certain procedures in place to ensure the accuracy of the information it received from Cleara, including conducting quality assurance reviews and monitoring disputes. A jury could find that those procedures were not reasonable to assure maximum possible accuracy in this case but, as RentGrow stresses, the fact that only 0.2% of reports returning a criminal record resulted in a dispute is strong evidence that it did not ignore an unjustifiably high risk that its procedures were inadequate. See Smith, 837 F.3d at 610-11.

Contrary to Plaintiff's argument, the First Circuit's decision in McIntyre did not put RentGrow on clear notice of the insufficiency of its procedures such that a jury could find that RentGrow willfully failed to comply with § 1681e(b). The court in McIntyre found a genuine dispute about the reasonableness of RentGrow's procedures based on evidence that "RentGrow knew or should have known that [a specific vendor]'s data was not presumptively reliable," such as the significant dispute rate for civil court records from the vendor and the fact that the vendor stopped reporting such records following a settlement between the vendor and over thirty states. 34 F.4th at 98. Because McIntyre was a fact-specific decision about a different vendor than Cleara and Plaintiff has not identified similar evidence that put RentGrow on notice that Cleara may be an unreliable source, McIntyre does not support a finding of willfulness in this case. Cf. Grant v.

36

RentGrow, Inc., No. SA-21-cv-1172, 2023 WL 5813140, at *19-22 (W.D. Tex. Sep. 6, 2023) (denying RentGrow's motion for summary judgment as to the willfulness of its failure to follow reasonable procedures under § 1681e(b) in part because McIntyre put RentGrow on notice that the specific vendor may be an unreliable source).

## ORDER

For the foregoing reasons, RentGrow's motion for summary judgment (Dkt. 75) is **DENIED** with respect to Plaintiff's claims of negligent noncompliance with 15 U.S.C. § 1681i and negligent noncompliance with 15 U.S.C. § 1681e(b) in connection with the Mallard's report and otherwise **ALLOWED**.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

37